May it please the Court. The stakes could not be higher here, as it is undisputed gang members directed multiple death threats and escalating physical violence against Brian Gomez-Rivera before he fled El Salvador as a child. The Court should either reverse the BIA's decision or remand for a proper application of the correct legal standard as to whether at least one central reason why gang members targeted Brian was his family relationship to his father. Reversal would be warranted because this is the rare case, distinguished by Brian's credited, compelling, and direct evidence that the gang members who threatened to kill him told him on multiple occasions that they were in fact targeting him because of his family relationship to his father. Alternatively, this Court should at least remand for the BIA to apply the correct legal standard. The Court's leading mixed motive decisions, DeBrenner v. Marraquino-Choma, teach that the agency does not get a free pass just by citing a correct standard. Instead, this Court makes a particularized evaluation of the content of the agency decision. Where the nature of the BIA's decision indicates it applied the wrong standard or leaves the matter in doubt, this Court has not hesitated to remand. Can you point me directly where you think is the best, I'll call it evidence, that the IJ and the Board applied the wrong standard? Where is it that precisely they went wrong? Sure. If we look at the addendum, the Board's decision, I believe it's pages, you have the bottom of page 17 into 18 of the addendum where the Board states that it did not find any clear error that the immigration judge found that the motive for the harm suffered by Brian at the hands of the gang members was general gang recruitment and not, and those are the specific words the BIA uses, and not the protected ground, his family relationship to his father. As far as the immigration judge, what the immigration judge says in her decision, we have evidence, not only does she not cite what the BIA says she is citing, the incidental and tangential standard, when she's analyzing nexus to the particular social group here, the family-based claim, she actually cites the subordinate language of the BIA's decision and then goes on to say that, in her opinion, that the harm suffered by Brian, that the evidence showed that because, for example, when she's analyzing the fact that other people had been harmed for other reasons, because of that it showed that the harm they suffered was on account of another reason, and therefore the harm suffered by Brian was on that same reason that she found to be general gang recruitment and not the protected reason that we're asserting today. The content of the BIA decision in this case repeats the same kind of mistakes that this Court corrected in DeBrenner by effectively requiring Brian to prove the gang's sole or primary reason for targeting him was his protected family relationship. And now the BIA's decision is confusing as well, because not only does it require that, but it also mischaracterizes the IJ's decision as making a factual finding that Brian's protected family group was, quote, incidental or tangential to the gang's unprotected gang motive, and as I just explained, that IJ had never found that in analyzing the particular social group nexus element. But that's the right standard. To say it was incidental, that's an appropriate approach, correct? Yeah, that is what the BIA has held, and that is what this Court has held in other cases as the appropriate standard for analyzing these mixed motive claims. So give me your best argument of why this isn't incidental. There's findings that other boys were treated equally bad or worse with no connection, and that he was just really a member of a group that was young El Salvadorian boys at that point who the gang found to be good targets for recruitment. Well, a couple reasons here. On the legal side of things, those might be proper considerations to take into account when analyzing these mixed motive claims when the proper legal standard is applied. Here, as the Court has found in DeBrenner and in Malanga v. Mukasey, when the improper standard is applied, then those considerations are not proper. There's no substantial... Let's apply the right standard. How about that? And so tell me how we look at that, because there are a lot of factors here that seem to be playing into the troubles this young person is finding himself in. Sure. Well, this case is different. We can affirmatively say that this case here, based on the record, is different from any case in this context that has come before this Court because we have, at pages 259 and 260 of the administrative record, we have evidence, direct evidence, that the gang members are saying, we are targeting you, and this is in the context of multiple death threats, at least eight death threats according to Brian's testimony, that the gang members were targeting him because of his father, because his father had captured people his father had worked previously as a police officer and worked taking, transporting gang members to and from the prison. And so what we have here is evidence that we've not seen in these same cases before, where we've got the person or the entity inflicting harm saying why they're inflicting harm. Practically the words of the statute itself is falling out of the mouth of the persecutor here. And why that would not be compelling in a mixed mode of analysis, I don't know. But here, that is what distinguishes this case from other cases that have come before this Court in this context. Now even the government concedes, this is only kind of furthering, kind of compounding the confusion here, even the government concedes at page 33 of its answer brief before this Court, that the gang had both a protected family reason for the harm that they inflicted and an unprotected recruitment reason for targeting Brian. And that is exactly contrary to what the BIA is saying in its decision in affirming the IJ's order. And as I stated, there is no Eighth Circuit precedent in this context that has featured the type of evidence that we have here today. And the only way the BIA could have reached this result, in our opinion, is by either applying the wrong standard, which would thus require remand for application of the proper standard, or else they ignored key evidence here, evidence that we don't have in these other cases. You've also raised this imputed political opinion claim. Isn't that really just kind of a different way of saying that if you resist the gangs, that you are sort of just putting a political gloss over what we've already said in our case law? Is it sufficient to create a social group which is saying no to gang recruitment and I don't like the gang activity? Isn't that just another way of saying it? I think it depends on a case-by-case basis. You're correct that this Court has held in the past that just simply saying no to a gang does not automatically create this imputed anti-gang political opinion. However, here, just based on the evidence that we have, it does seem like they are going specifically at Brian because of his father, because of his father's connection to the police. But that's a different social group, right? That's your family social group? Yeah, that's a family social group. Essentially, today we wanted to focus more specifically on just the family-based particular social group. We kind of rest on what we've included in the briefs. We're open to answer any questions regarding the political opinion. I think, though, too, one other reason that remand would be necessary in this case or would be appropriate is that after this case was decided, there's been intervening BIA precedent that's been handed down that discusses this exact context, family-based social groups in these gang contexts. And in that case, not only does that case represent the BIA clarifying guidelines on how adjudicators should handle cases like these, but that case specifically discusses how nexus may be found in situations like this and it discusses the interweaving of a political motive with the targeting of a family member. So what we have here is, yes, we've got this particular social group that's based on family members' relationship to his father, but also we have this backdrop where we have police, gang members, and that is something that was brought up in expert testimony where the expert explicitly stated that, yes, because of Brian's relationship to, excuse me, because of his father's work as a police officer here, that that would be reason to find that their targeting of him was based upon this imputed political opinion. And also with this intervening precedent, we believe that it's appropriate to remand so that the BIA can decide this in light of its recent guidance. It's a little bit confusing, so I think that's probably for the best. All right, counsel, let's say you're out of time. Thank you. Ms. Carter? You may proceed. Good morning. May it please the Court, Margo Carter for the United States Attorney General. I'd like to start out also just by thanking opposing counsel for representing their client, Pro Bono, which is, of course, of service to the Court and to their client. The record in this case simply does not compel the conclusion that the petitioner met his burden of proving that he suffered persecution or would suffer persecution on account of a protected ground, that the gang recruitment efforts were the one or that his father's police officer status was the one central reason why he was persecuted or would be persecuted. Was it the one central? I'm sorry, a central reason, a central reason. And at the end of the day, the standard of review in this case is such that the petitioner would have to establish that the record compels the conclusion that a central reason why he was targeted for harm in El Salvador was on account of a protected ground. The Board applied the correct mixed motive standard for matter of JBN and SM, which is their own precedent decision, and found that the protected grounds that were alleged in this case, relating to an imputed political opinion and membership in a particular social group made up of family members of this police officer, these grounds were incidental to grounds that were not protected. That is, the gang members want to increase their ranks, and that's not a protected basis for seeking settlement. In this case, though, there was testimony from the professor who expressly said that this is a reason to target someone like Brian because of his father's status as a police officer. And then that seemed to be coupled with testimony that that's precisely what some of the gang members did in using his father's nickname and sort of talking with him about that. Why isn't that enough to set Brian apart, even if he's also targeted generally as a young male in El Salvador? Why isn't that enough to be at least a central reason? Well, I think that it has to be a central reason, and highlighting the word central there, to say that it's a reason is reading the word central out of the statute. And in this case, while the expert witness did testify that that might be a reason why somebody would be targeted, the expert witness in this case also testified that typically in cases where an individual is targeted for recruitment on the basis of their father being a military or police officer, it's to get information out of that person. There are other things that they're looking to get. In this case, the petitioner's father had left the country four years earlier, and that was part of what the board and the immigration judge took into consideration. Correct me if I'm wrong, but wasn't there some other evidence, though, that not just information, but maybe they could use Brian to lure the father back for that information or something like that? The petitioner's testimony was that he thought that maybe they would try and work him over in order to bring his father back. Was that credited? Yes, that was credited. I mean, he was considered credible. At the end of the day, we're now talking about whether or not the facts in this case are sufficient to establish that a central reason why the petitioner in this case was targeted was on account of a protected ground, and where the immigration judge and the board presented a reasonable basis for their conclusions that's grounded in the record, it would be difficult, if not impossible, to say that the record compels another conclusion, where the record provides ample support for the conclusion that there were non-protected grounds that were the central reason why the petition was targeted. And if you look at matter of LEA, which the board came out with after the decision was rendered in this case, matter of LEA is unavailing. I think opposing counsel mentioned that the case should be remanded for matter of LEA or for consideration of the standards set forth in matter of LEA, but the board applied the correct motive standard in this case. And critically, in matter of LEA, if you look at pages 43 to 44 of that decision, the board says, look, if the persecutor would have treated the applicant the same, if the protected characteristics of the family did not exist, then the applicant has not established a claim on this ground. And here you have evidence in the record where many individuals who were not the children of police officers were targeted for recruitment into this gang because the gang was looking to increase its membership. And the gang's motive of looking to increase its membership is not a protected ground that's recognized under the INA as a basis for asylum. Can we look at it? You say he would have been treated the same without his status in his protected group. What if the evidence is that he suffered an increased risk or increased amount? So there's a baseline amount of gang recruitment among his category of 10 to 12 to 14-year-old boys. But he had a heightened sort of a red flag on his head. Is that enough to say it's a central reason? I think that if you had established perhaps, and this is where the family members of the petitioner himself come in, no one else in his family, no one else who was a member of his protected particular social group was targeted. He's effectively a particular social group of one. There was nobody else. His sister, who is also the child of a police officer's father, was not targeted in this case. And the petitioner experienced gang recruitment efforts, but so did many other individuals in his town who fit the same demographic. And, in fact, the expert witness testified that he fit a certain demographic that was likely to be recruited. And to the extent that you mentioned sort of demographic plus, the plus is not – you can't show that the plus part is incidental to the real reason or the central reason why he was targeted. And here, if the central reason is that this gang organization is looking to increase its membership and increase its ranks, the fact that he had this additional characteristic is not this positive. And it doesn't establish that the record compels the conclusion that he faces persecution on account of a protected ground as a central reason why they're going after him. What's the record say about the likelihood that a girl would be recruited into a gang? Is there a gender distinction among male Salvadorian gang members? You know, the expert witness talked about how the petitioner in this case fit the demographic because he was male. On the other hand, the petitioner's proposed social group was family members of this police officer. And it wasn't a limited distinction to just male relatives. And again, there's no evidence in the record indicating that other relatives of this particular police officer were specifically singled out and targeted for gang harassment or recruitment. In fact, the evidence in the record that talks about other relatives or people who are connected to the petitioner's father suggests that they were targeted in – I guess the mother paid some extortion fees to certain gang members. And nothing in the record suggests that she did that because of her connection to the petitioner's father. And the petitioner's sister similarly faced no harassment or targeting on account of her father's police status. In sum, the record simply does not compel the conclusion in this case that the petitioner faces persecution on account of her protected ground as a central reason for the persecution. And the board applied the correct standard from matter of JVM and matter of SM in its decision and conducted a mixed mode of analysis. They did consider this evidence that existed regarding the petitioner's father. But ultimately, it wasn't enough to conclude that the central reason for the petitioner's harassment that he experienced in El Salvador, that this was not the central motive of the gang members was to target him on the basis of his father's status. Is Brian still a minor? He was born in 2001, so he'd be just on the bubble. Does he have any other avenues since his father is here as sort of an aside? I mean, I don't know what other avenues for relief. If his father had filed an asylum application and been granted, he could have been a rider on that application. But to my knowledge, his father has not. As far as I know, his father hasn't filed an application. Yeah, I'm not aware of what other forms of relief. You'd have to kind of look at the facts and see if there was something. But at least regarding this particular application, he didn't meet his burden of proof. He had an opportunity to go before U.S. CIS. I mean, this case began in 2014. He went before CIS and wasn't able to establish his burden of proof. He had an opportunity to present witnesses before the immigration judge. He presented a full claim with witnesses and cross-examination and an expert witness and wasn't able to prevail there. Had another opportunity to appeal before the board and was counseled. And presumably, if there was some other form of relief, he would have sought it by now. If the court has nothing further, we would ask that the court deny the petition for review on the basis of our arguments and our briefs. Thank you, counsel. How much rebuttal time remains? All of it. All right. Ms. Dutt, you may proceed. May it please the court. In answer to Judge Kelly's question, if all you had to do for the one central reason standard to prove that it's incidental was to show that there are other people outside of the group targeted, then the mixed motive analysis would effectively be nullified. And so our stance is that while that is relevant to the consideration, that does not completely undercut Brian's claims for this application. And further, I want to really emphasize that unlike many cases, like the judges have recognized, Brian's testimony has been found to be credible. If the one central reason standard cannot be found with support from direct evidence to the applicant, and it wasn't that he thought he was going to be targeted. He was told when he was being persecuted, excuse me, when he was being attacked, when he was being threatened, when his life was being threatened, why he was being targeted. If he's found to be credible, this was supported by expert witness testimony that was also found to be credible. And we're uncertain what more the one central reason could need standard to support that. And your honors is right. It is one central reason, or at least one central reason. It is not a central reason or the only reason. Brian's credited testimony was that he was told what would happen. That he was going to be used as a means, as Judge Kelly recognized, to pull his father back to El Salvador. That he was going to be used to harm his father because of his involvement with the gang policing activities. Can you testify that that's what the gang members told him, or that's what he sort of either assumed or speculated would happen? The record says that he was told that that's what would happen. And so that is a difference, in that he wasn't speculating that maybe they were after him because of this reason. He was told why. And the language from LEA that he must be treated the same, that the counsel points to, that must be read in context with the statute. The statute does not say that if this person would be treated differently, then they can't receive statutory protection. Brian may have been fitting into the category of individuals who would be targeted by the gangs. However, he was targeted, at least a central reason why he was targeted was because of this relationship to his father. And there's evidence in the record that supports that further. How do we factor in what I think the evidence shows is that no other family member was targeted because of his or her connection to the father of a former police officer? That's relevant, isn't it, or is it not? It is relevant, Your Honor. However, it's relevant within the context of a correct legal analysis, and that when factoring in those considerations, they can be weighed. We're not arguing that that evidence can't be weighed. However, it can't be weighed as an either-or analysis, that if this happens, if other people in his family aren't targeted, then Brian cannot be targeted. The language of the statute says that it asks for at least one central reason that the applicant was targeted, not everyone in the particular social group. And it doesn't consider that as a full analysis. It doesn't consider those factors as dispositive. And that's sort of what the IJ and the board did, though, wasn't it, sort of looked at it as another factor to determine whether there was a central reason for Brian and just sort of went through them like you're doing, only you're weighing them a little differently. Right. They did consider them, and I hate to harp on the same thing, but because of this language of the statute and concluding this subordinate language and saying and not, as the Board of Immigration Appeals said in their decision, is that and not, meaning that because Brian was targeted because of his relationship, because he fits the category of gang recruitment, it can't be because of his relationship to his father. And so those are relevant considerations that can be taken into account, but within the confines. And also we would like to point out that the sister was not similarly situated to Brian. She lived in a different town. She was a different age. And so those are also relevant factual considerations that compel, in addition to the legal error, that the evidence is in support of approval. And I see that I'm running out of time. I just want to emphasize that Brian has been told what will happen if he returns to El Salvador, that he will be persecuted, that he will be attacked. And for that reason, we ask for remand. Thank you. Thank you. Thank you very much for your presentation this morning. The case is submitted, and you may stand aside.